UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIKAELA ELLENWOOD and
JORGE CASANOVA,

    Plaintiffs,

v.                                                         Case No. 8:20-cv-1182-T-60AEP

WORLD TRIATHLON CORP.,
COMPETITOR GROUP HOLDINGS,
INC., and COMPETITOR GROUP, INC.

    Defendants.
_____/

**<u>ORDER GRANTING DEFENDANTS'</u>**
**<u>CONVERTED MOTION FOR SUMMARY JUDGMENT</u>**

This matter is before the Court on Defendants' converted motion for summary judgment. On September 8, 2020, "Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Strike Jury Trial Demand" was filed. (Doc. 41). Plaintiffs filed their response in opposition on September 22, 2020. (Doc. 42). The Court held a hearing on October 28, 2020, after which Defendants' motion to dismiss was converted to a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. (Doc. 50). Both parties filed supplemental memoranda, as permitted by Rule 12(d), on November 11, 2020. (Docs. 54; 55). After considering arguments at the hearing and reviewing the motion, response, court file, and record, the Court finds as follows:

## Background

The material facts necessary to decide the instant motion are simple, straightforward, and undisputed. Defendants World Triathlon Corporation, Competitor Group Holdings, Inc., and Competitor Group, Inc., are in the business of hosting, managing, sponsoring, and facilitating various running events across the country and abroad. Plaintiffs Mikaela Ellenwood and Jorge Casanova entered into contracts, via the internet, for races scheduled to take place in 2020. Both plaintiffs electronically executed contracts that included various terms and were required to demonstrate their assent to these terms by clicking fillable boxes.

Ms. Ellenwood, a resident of Denver, Colorado, paid $89.00 (plus a $14.99 processing fee) to register for a Rock 'n' Roll Marathon Series running event to take place in San Francisco on April 5, 2020. (Doc. 30 at 8-9). Mr. Casanova, a resident of Vallejo, California, paid $399.60 (plus a $29.60 processing fee) to register for a 2020 Ironman Triathlon running event to be held in Santa Rosa, California on May 9, 2020. (*Id*. at 9). Both events were cancelled based on mandates from government officials relating to the outbreak of COVID-19. Defendants have offered participants the opportunity to transfer their registrations to future comparable races, but have otherwise refused to refund any monies.

Plaintiffs have brought this purported class action suit because Defendants have failed to provide refunds for those races. Defendants maintain that the contracts signed by Plaintiffs both contain identical "no-refund" provisions, allowing Defendants to reschedule the races in lieu of issuing refunds.

In their First Amended Class Action Complaint (Doc. 30), Plaintiffs allege claims for (1) breach of contract, (2) unjust enrichment, and (3) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201 *et seq.*, *F.S.* Defendants moved to dismiss these claims, and this motion, as previously stated, has been converted to a motion for summary judgment. (Doc. 50).

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The written contracts at issue here both specify that the parties' relationships "will be governed by Florida substantive law." Under Florida law, the construction and interpretation of an unambiguous written contract is a matter of law for the court and is therefore properly subject to disposition by summary judgment. *See Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290, 1297 (11th Cir. 2011) (holding that summary judgment was properly entered based on interpretation of an unambiguous written contract); *Ciklin Lubitz Martens & O'Connell v. Casey*, 199 So. 3d 309, 310 (Fla. 4th DCA 2016) (interpretation of unambiguous contract presents a question of law for the court); *Gulliver Schools, Inc. v. Snay,* 137 So. 3d 1045, 1046 n.1 (Fla. 3d DCA 2014) (same).[1]

## Analysis

### *Breach of Contract*

After carefully reviewing the written contracts governing the parties' relationships here, the Court concludes that Defendants' position is well taken. Both contracts clearly and unambiguously state that there will be "no refunds." Specifically, Plaintiff Casanova's contract provided as follows:

> I acknowledge and agree that WTC, in its sole discretion (whether it is for safety reasons, legal reasons or any other reason) may… (b) delay or cancel the Event (or any leg(s) of the race) if it believes the conditions are unsafe or otherwise unsuitable for the Event. If the race course or Event is changed,

---

[1] In the Florida state court system a trial court's interpretation of a written contract is rarely the final word. Florida appellate courts apply *de novo* review to the undisputed facts and the applicable contractual language. *See Chandler v. Geico Indem. Co.,* 78 So. 3d 1293, 1296 (Fla. 2011). In practical terms, this means that many such cases are decided by the appellate courts. Federal courts follow a similar approach. *Dear v. Q Club Hotel,* 933 F.3d 1286, 1293 (11th Cir. 2019) ("The interpretation of a contract is a question of law we review *de novo*.").

> modified, delayed or cancelled for any reason, including but not limited to acts of God or the elements (including without limitation wind, rough water, rain, hail, hurricane, tornado, earthquake), acts of terrorism, fire, threatened or actual strike, labor difficulty, work stoppage, insurrection, war, public disaster, flood, unavoidable casualty, race course conditions, or any other cause beyond the control of WTC, *there will be no refund* of WTC's entry fee or any other costs incurred in connection with the Event.

Casanova Contract (Doc. 41-1 at 18) (emphasis added). Plaintiff Ellenwood's contract included similar, but not identical provisions as follows:

> I acknowledge and agree that operator, in its sole discretion (whether it is for safety reasons, legal reasons or any other reason) may … (b) delay, modify, or cancel the Event for any reason, including if it believes the conditions are unsafe or otherwise unsuitable for the Event. If the race course or Event is delayed or modified or cancelled for any reason, including but not limited to acts of God or the elements (including without limitation including without limitation wind, rough water, rain, hail, hurricane, tornado, earthquake),acts of terrorism, fire, threatened or actual strike, labor difficulty, work stoppage, insurrection, war, public disaster, flood, unavoidable casualty, race course conditions, or any other cause beyond the control of Operator, *there will be no refund* of the Operator's entry fee or any costs incurred in connection with the Event.

Ellenwood Contract (Doc 41-1 at 10-11) (emphasis added).

This is a very simple case. "No refunds" means exactly what it says -- no refunds. Florida law is clear that courts are not permitted to "rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain." *Dear v. Q Club Hotel,* 933 F.3d 1286, 1297 (11th Cir. 2019) (internal quotation omitted); *Marriott Corp. v. Dasta Constr. Co.*, 26 F.3d 1057, 1068 (11th Cir. 1994); *Steiner v. Physicians Protective Tr. Fund*, 388 So. 2d 1064, 1066 (Fla. 3d DCA 1980)). The "no refund" provisions at issue here are valid

and enforceable and the failure to provide refunds in the factual scenario alleged here does not constitute a breach of the parties' agreements.

Faced with clear and unambiguous "no refund" provisions, Plaintiffs have asserted various arguments in an attempt to invalidate the very agreements upon which they base their breach of contract claims. None of these arguments has merit.

Plaintiffs first argue the contracts lack mutuality, rendering them illusory and legally void from formation. An illusory contract is one in which there is no mutuality of obligation. *Johnson Enters. of Jacksonville v. FPL Grp., Inc.,* 162 F.3d 1290, 1311 (11th Cir. 1998). Here, mutuality of obligation clearly exists. Plaintiffs had to pay money and Defendants had to facilitate a race, assuming they could do so in the absence of events beyond their control. Defendants were not free to cancel the races and keep the entrants' money just because they felt like it. Rather, the contracts included a series of contingencies beyond Defendants' control that could result in cancellation. In this context, a "no refund" provision is fair and makes perfect sense when considering the many contingencies beyond the organizers' control that could occur in connection with an outdoor sporting event. Separate and apart from something like a pandemic, a wide variety of contingencies completely outside the Defendants' control could make it impossible to hold a race. Inclement weather is just one obvious example. In this context, a "no refund" provision for contingencies outside of Defendants' control does not render the contract illusory.

Plaintiffs next argue that the contracts at issue here are unconscionable. A contract must be both procedurally and substantively unconscionable to be rendered unenforceable. *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014). "[T]he determination of unconscionability is a matter of law." *Belcher v. Kier*, 558 So. 2d 1039, 1040 (Fla. 2d DCA 1990). For a contract to be substantively unconscionable it must be of a type so egregious "that no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other." *FL-Carrollwood Care, LLC v. Gordon*, 72 So. 3d 162, 165 (Fla. 2d DCA 2011) (internal quotation omitted). That is clearly not the situation here. In the context of outdoor sporting events, where there are always contingencies far outside the contracting parties' control, a "no refund" provision is fair and consistent with common sense. If it were deemed unconscionable for the host of an outdoor sporting event to include a "no refund" provision in its contracts, it is unlikely any rational economic actor would ever agree to host an outdoor sporting event due to the many weather-related contingencies that can and do occur.

Because Plaintiffs cannot satisfy the substantive component, it is unnecessary for the Court to consider their procedural unconscionability argument. For the reasons stated, summary judgment in Defendant's favor is appropriate as a matter of law on this claim.

*Unjust Enrichment*

Where, as here, a valid, binding, and enforceable contract exists, Florida law does not permit an equitable claim concerning the same subject matter. *Kovtan v.*

*Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984) ("It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter."); *In re Estate of Lonstein*, 433 So. 2d 672, 674 (Fla. 4th DCA 1983) (same). A contract implied in law, or "quasi contract," operates when there is no contract "to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation." *Commerce P'ship. 8098 Ltd. P'ship v. Equity Contracting Co.,* 695 So.2d 383, 386 (Fla. 4th DCA 1997). Consequently, summary judgment in Defendants' favor is appropriate as a matter of law on this claim.

***Florida Deceptive and Unfair Trade Practices Act (§ 501.201 et seq., F.S.)***

A FDUTPA claim for damages has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Whether an alleged act or practice is deceptive or unfair may be decided as a matter of law. *Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084, at *6 (M.D. Fla. Aug. 11, 2015), *report and recommendation adopted*, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015).

In the First Amended Class Action Complaint, Plaintiffs claim that Defendants violated FDUTPA only "by failing to provide refunds to Plaintiff and Class members to make them whole for the postponement or cancellation" of the events. (Doc. 30 at ¶ 78). Plaintiffs do not claim that any other actions on the part of Defendants were deceptive, unfair or unconscionable. The conduct alleged to violate the statute is precisely the same conduct that Plaintiffs claim as a breach of

contract. Plaintiffs' FDUTPA claim is thus simply a recasting of their breach of contract claim. The Court has already determined that the contracts at issue here are valid and enforceable under Florida contract law, and failing to provide refunds in the factual scenario alleged does not constitute a breach of those agreements. Indeed, the contracts at issue here specifically permit Defendants to withhold refunds.

While in some factual scenarios a FDUTPA claim can coexist with a breach of contract claim, the Florida Supreme Court has rejected the proposition that FDUTPA was intended to convert every breach of contract into a FDUTPA claim. *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 n.2 (Fla. 2003); *Varnes v. Home Depot USA, Inc.*, No. 3:12-cv-622-J-99TJC-JBT, 2012 WL 5611055, at *1 (M.D. Fla. Nov. 15, 2012) (dismissing FDUTPA claim that "merely restates the allegations of breach of contract and breach of warranty claims, without noting which facts show deceptive or unfair practices"); *Horton v. Woodman Labs, Inc.*, No. 8:13–cv–3176-T-30MAP, 2014 WL 1329355 at *4 (M.D. Fla. Apr. 2, 2014) ("A claim under FDUTPA applies to 'unfair' or 'deceptive' conduct and does not arise merely from an alleged . . . breach of contract claim."). To state a claim under FDUTPA concerning conduct that is specifically covered by a written contract, significant allegations of unfair, unconscionable, or deceptive conduct must be made. *Hache v. Damon Corp.*, No. 8:07-cv-1248-T-30EAJ, 2008 WL 912434 at *2 (M.D. Fla. Apr. 1, 2008).

Here, there are no allegations of unfair, unconscionable, or deceptive conduct beyond the conduct that is specifically permitted by the parties' contracts. Plaintiffs simply allege that Defendants' refusal to provide refunds – something that is permitted by the parties' contracts – constitutes a FDUTPA violation. Under the facts presented here, Plaintiffs' allegations, as a matter of law, do not constitute a FDUTPA violation. As such, summary judgment in Defendants' favor is appropriate on the FDUTPA claim. *See Paul v. Mayo Clinic*, No. 3:15-cv-1244-J-20MCR, 2017 WL 9937984, at *8-9 (M.D. Fla. June 6, 2017) (granting summary judgment for defendant on FDUTPA claim where defendant declined to provide a refund as previously agreed to by the parties); *P.C. Cellular, Inc. v. Sprint Solutions, Inc.*, No. 5:14-cv-00237-RS-GRJ, 2015 WL 128070, at *5 (N.D. Fla. Jan. 8, 2015) (dismissing FDUTPA claim with prejudice where allegedly deceptive conduct was "specifically authorized" by the parties' contracts).

Because the Court has granted summary judgment in Defendants' favor on the FDUTPA claim based on the reasons previously explained, it is unnecessary to consider Defendants' additional FDUTPA arguments.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and Strike Plaintiffs' Jury Trial Demand" (Doc. 41), which was converted to a motion for summary judgment, is hereby **GRANTED**.

(2) The Clerk is **DIRECTED** to enter judgment in favor of Defendants World Triathlon Corporation, Competitor Group Holdings, Inc., and Competitor Group, Inc., and against Plaintiffs Mikaela Ellenwood and Jorge Casanova, on all counts of the First Amended Class Action Complaint.

(3) The Clerk is directed to terminate any pending motions and deadlines and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 7th day of January, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**